UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

CONNIE GIBBS,
on behalf of herself and others
similarly situated,

    Plaintiff,

v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES INC., a Foreign for Profit
Corporation,

    Defendant.
_____/

CASE NO.: 2:21-cv-2153-SHM/cgc

FLSA COLLECTIVE ACTION

**JOINT MOTION AND INCORPORATED MEMORANDUM OF LAW
FOR APPROVAL OF FAIR LABOR STANDARDS ACT
COLLECTIVE ACTION SETTLEMENT**

COMES NOW, Plaintiff Connie Gibbs ("Gibbs"), individually on behalf of herself and the collective class (collectively "Plaintiffs," or individually "Plaintiff"), together with Sedgwick Claims Management Services, Inc. ("Sedgwick") (collectively, Plaintiffs and Sedgwick are referred to as "Parties" herein) hereby move this Court for approval of the Fair Labor Standards Act Collective Action Settlement ("Settlement Agreement" or "Settlement") between Plaintiffs and Sedgwick.

**I.    BACKGROUND.**

The instant case was filed on March 12, 2021, by Gibbs on behalf of herself and similarly situated employees under the Fair Labor Standards Act of 1928, 29 U.S.C. §201, et. seq. ("FLSA") for unpaid overtime compensation. (ECF No. 1). Gibbs alleged she was misclassified as a salaried exempt employee and that she was entitled to overtime pay for hours worked in excess of forty (40) hours a week. (ECF No. 1 at ¶¶ 8, 13, 17). Gibbs also alleged that others similarly situated to

her were also owed unpaid overtime compensation during the time period they were misclassified as salaried exempt. (ECF No. 1 ¶¶ 11, 15,16, 17, 25, 26, 28, 30).

On October 15, 2021, Plaintiffs filed an Unopposed Motion for Entry of Order Granting Conditional Certification and Approving Court-Authorized Notice Pursuant to 29 U.S.C. Section 216(b) ("Motion for Conditional Certification"). (ECF No. 134). Thereafter, various court status conferences ensued in relation to Plaintiff's Motion for Conditional Certification, and as a result, Plaintiffs filed Amended and Second Amended Motions for Conditional Certification (ECF Nos. 183, 187).

In Plaintiffs' Second Amended Motion for Conditional Certification (the operative motion with respect to certification), Plaintiffs sought conditional certification of a collective class of salaried exempt Disability Representative Srs. and salaried exempt Absence Management Care Team Representatives ("ACT Representatives"). (ECF No. 187). Plaintiffs alleged that Sedgwick misclassified Disability Representative Srs. and ACT Representatives, as exempt from FLSA overtime compensation requirements, paid them a salary, and did not pay overtime for hours worked in excess of forty (40) hours per workweek. (ECF No. 187).

On August 10, 2022, this Court granted Plaintiffs' Second Amended Motion for Conditional Certification. (Doc. 192).

In the instant case a total of one hundred and ninety-three (193) class members, including Gibbs, opted into this action. Pursuant to their individual Consents to Sue and Opt-In, they agreed and consented to being Plaintiffs in this FLSA case and agreed to be bound by any judgment by the Court or any settlement of this action. Their individual Consent to Sue and Opt-In Forms also designated the law firm of Lytle & Barszcz to be their counsel in this action.

## II.     SETTLEMENT.

During the discovery phase of this case and after seven (7) months of lengthy settlement negotiations, a settlement was reached. (ECF No. 290). Given Sedgwick and Plaintiffs have successfully come to an agreement to resolve this case, they now seek approval of the settlement from the Court. A copy of the Settlement Agreement between the Parties is attached as Exhibit "1." Attached to the Settlement Agreement are three different exhibits. The first, Exhibit A is a Notice of Settlement of Lawsuit notifying the Plaintiffs of the settlement of this lawsuit and their rights; Exhibit B is the breakdown of the amounts to be paid to the Plaintiffs (which payments are to be split with fifty percent going to wages and fifty percent to liquidated damages); and Exhibit C is the Release of Claims Forms that Plaintiffs will be required to sign to receive payment under the terms of the Settlement Agreement.

The settlement provides that Sedgwick will pay up to the total amount of $2,500,000.00 as follows: (1) up to $1,875,000.00 will be paid to Plaintiffs, if they timely sign and timely return the Release of Claims Form within the timeframe required by the Settlement Agreement;[1] (2) $625,000.00 will be paid in attorney's fees and in costs by Sedgwick to Plaintiffs' Counsel Lytle & Barszcz, P.A.; and, (3) Sedgwick shall pay all fees and costs of the Third Party Administrator Simpluris.

In exchange for all payments made under the terms of the Settlement Agreement and Release, Plaintiffs who return release forms agree to release Sedgwick from their FLSA claims while they were salaried exempt Disability Representative Srs. and/or ACT Representatives for the three (3) year period prior to the filing of their Opt-In in this action up through the date they

---

[1] Sedgwick is under no obligation to pay amounts allocated to Plaintiffs who do not timely return executed release forms.

were no longer in one of these salaried exempt positions, or until May 22, 2021, when they were converted to hourly, including any claims for interest, attorney's fees, or costs in this case.

For any Plaintiffs who do not return release forms, no payment shall issue and no claims shall be released. Pursuant to the Settlement Agreement, Sedgwick retains the right to nullify the Agreement if either (a) fifteen (15) or more Plaintiffs (combined) fail to timely sign and return Release Forms; or (b) the Plaintiffs (combined) who fail to timely sign and return Release Forms represent more than fifteen percent (15%) of the Payment Amount. In the event Sedgwick nullifies the Agreement due to participation, it is agreed in the Settlement Agreement that the Parties will return to their same positions in the lawsuit without prejudice to either party. Hence, as requested herein, the Parties ask that the Court retain jurisdiction for the time period of compliance in the Settlement Agreement. The Parties agree to immediately notify the Court once all terms hereunder are met by filing a Joint Motion for Dismissal with Prejudice as set forth in herein.

Sedgwick and Plaintiffs agree this is a fair and reasonable settlement of a bona fide dispute as to Plaintiffs' overtime claims under the FLSA while they were employed as salaried exempt Disability Representative Srs. and/or salaried exempt ACT Representatives, up through the date an individual was no longer employed as a salaried exempt Disability Representative Sr. and/or salaried exempt ACT Representative, or until May 22, 2021, when they were converted to hourly.

The Parties request that, upon a finding that the Settlement Agreement is fair, the Court issue an Order dismissing the case without prejudice and retaining jurisdiction for entry of a final order of dismissal, with prejudice. Upon completion of the payment provisions of the settlement, the Parties will file a Joint Motion for Dismissal, with prejudice. As such, the Parties are requesting the Court retain jurisdiction for a limited time period.

### III.   MEMORANDUM OF LAW

**A. Standard of Review.**

The FLSA's overtime compensation provisions are mandatory and are generally not subject to being waived, bargained or modified by contract or settlement. *Baker v. ABC Phones of N.C.*, 2020 U.S. Dist. LEXIS 240695 *17 (W.D. Tenn. December 22, 2020). There are two ways in which claims for back wages under the FLSA may be settled or compromised. Id. at *17-18. The second way is when employees bring a private action for back wages and present to the court a proposed settlement agreement. Id. at *18. In this situation, the court must scrutinize the settlement for fairness. Id.

Before approving an FLSA settlement, the court must ensure that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Baker*, at *18, *quoting Lynn's Food Stores, Inc. v. United States*, 679 F. 2d 1350, 1355 (11th Cir. 1982); *see, e.g., Athan v. United States Steel Corp.*, 523 F. Supp. 3d 960, 2021 U.S. Dist. LEXIS 39617, at *6 (E.D. Mich. March 1, 2021); *Lakosky v. Discount Tire Co., Inc.*, 2015 U.S. Dist. LEXIS 99960, at *3 (E.D. Mich. July 31, 2015). The Sixth Circuit "…has not directly stated the factors courts are to consider in deciding whether an FLSA collective action settlement is fair and reasonable." *Baker*, 2020 U.S. Dist. LEXIS 240695 at *19. However, under Rule 23(e) of the Federal Rules of Civil Procedure, a seven-factor test is applied to determine whether or not a class action settlement is fair, reasonable, and adequate. *Doe v. Déjà Vu Consulting, Inc.*, 925 F. 3d 886, 894-95 (6th Cir. 2019), *citing International Union, UAW, et al. v. General Motors Corp.*, 497 F. 3d 615, 631 (6th Cir. 2007).

The factors include the following:

    (1)    the risk of fraud or collusion;
    (2)    the complexity, expense, and likely duration of the litigation;
    (3)    the stage of the proceedings and the amount of discovery completed;

5

(4)  the likelihood of success on the merits;
(5)  the opinions of class counsel and the class representative;
(6)  the reaction of absent class members; and,
(7)  the public interest

*International Union*, 497 F. 3d at 631.

### B. The Proposed Settlement Agreement.

In this case, Plaintiffs asserted claims for unpaid overtime under the FLSA for the time period during which they were employed as salaried exempt Disability Representative Srs. and/or salaried exempt ACT Representatives. Sedgwick contends, and Plaintiffs deny, that Plaintiffs were employed in a bona fide administrative capacity and were, therefore, exempt employees under the FLSA pursuant to 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.200, et seq. and were already properly compensated through their salary therefore no additional money is owed. There is bona fide dispute as to whether the Administrative Exemption applies to Plaintiffs. These issues were vigorously contested between the Parties giving rise to litigation spanning over two years.

During the relevant time period, Plaintiffs were not required to track the number of hours they worked, nor did Sedgwick track their hours with a timekeeping system, and therefore Plaintiffs had to estimate the number of hours worked during their employment, relying on their memories and inferences drawn from data produced by Sedgwick, such as the times they logged on and off of Sedgwick's phone and computer systems. Sedgwick disputed those estimates, pointing to its analysis of the data as well as discrepancies in the number of hours claimed and contends the number of hours over 40 per week that Plaintiffs worked is substantially lower than claimed by Plaintiffs. As such, there was a clear dispute between the Parties concerning the actual number of hours worked by the allegedly misclassified Plaintiffs. During the discovery phase of this case, the Parties spent numerous hours analyzing data produced by Sedgwick from the systems Plaintiffs logged in and out of to perform their work.

6

Sedgwick further asserts that even if Plaintiffs were improperly classified as exempt, Plaintiffs would only be entitled to .5 hourly pay since they worked different hours each workweek and Sedgwick believes that Sedgwick and Plaintiffs had a clear and mutual understanding that Plaintiffs' salary was intended to compensate them for all hours worked. Plaintiffs dispute this claim and believe the time and a half rate would apply.

The Parties also disagree over entitlement to liquidated damages and application of a two or three-year statute of limitations under the FLSA.

Moreover, the Parties' assessments in this matter were further informed by litigation of *Easterwood v. Sedgwick*, 6:19-cv-700-Orl-78LRH (M.D. Fla), where the plaintiffs and Sedgwick were represented by the same attorneys as this instant matter and which involved the same positions. The *Easterwood* matter was extensively litigated and voluminous discovery was exchanged in that case as well.

Plaintiffs and Sedgwick spent numerous hours to come to a fair and equitable settlement that took into account the large divide between Plaintiffs' position and Sedgwick's position as to the likelihood of success on the merits and Plaintiffs' hours worked.

After carefully and thoroughly considering the above information, Sedgwick and Plaintiffs agreed to compromise the FLSA claims of all Plaintiffs based upon a number of factors pertaining to these issues. In the course of extensive settlement negotiations spanning seven (7) months, Sedgwick and Plaintiffs utilized their respective analyses to come to an agreeable settlement amount. As a result, the settlement was a compromise between Plaintiffs' calculations and Sedgwick's calculations.

In addition, Plaintiffs' Counsel also developed an equitable distribution of the settlement amount, using certain factors to determine a fair and equitable settlement and to calculate the pro-

rata distribution of the settlement proceeds amongst the Plaintiffs. In this regard, the following factors were utilized: (i) the number of weeks a Plaintiff worked in a particular job during the relevant time period; (ii) the number of weeks worked by a Plaintiff during the class time period; (iii) when a Plaintiff opted into the lawsuit; (iv) the particular Plaintiff's rate of pay; (vi) the estimate of hours a Plaintiff worked in any given work week based upon Plaintiffs' estimate of hours as well as Sedgwick's records; (vii) whether Plaintiffs were parties to and received payments from prior settlements with Sedgwick; and, other factors related to the legal risks associated with continued litigation and trial. The amount paid to Plaintiffs pursuant to the pro-rata distribution is captured in Exhibit B to the Settlement Agreement. Pursuant to the Settlement Agreement, the payment amounts Plaintiffs will receive, if they sign and return releases, range from $100.00 to $34,536.52, and were based upon a variety of factors detailed above, including the risks of continuing to litigate.

Turning to the seven (7) factors set forth in *International Union,* 497 F. 3d at 631, the Parties submit this settlement is a fair and equitable resolution of this FLSA collective action as follows:

**1. No Fraud or Collusion.**

Courts in this Circuit have found that when plaintiffs in an FLSA collective class action are represented by experienced counsel, it supports a conclusion that there was no fraud or collusion and that the settlement was the product of an arms' length transaction. *See e.g. Scobey v. GM, LLC*, 2021 U.S. Dist. LEXIS 207917, at *6-7 (E.D. Mich. October 28, 2021); *Walker v. Ryan Transp., Inc.*, 2021 U.S. Dist. LEXIS 111688 (E.D. Mich. June 15, 2021). Here, each party was independently represented by counsel. Plaintiffs were represented by LYTLE & BARSZCZ and Sedgwick was represented by WILSON TURNER KOSMO LLP and OGLETREE DEAKINS

8

NASH SMOAK & STEWART, P.C., each attorney has extensive experience in litigating claims under the FLSA, including claims for unpaid overtime compensation. Each counsel was obligated to and did vigorously represent their respective clients' interests. Additionally, the Parties spent seven (7) months engaging in detailed, at times adversarial negotiations, to resolve this case. There was no fraud or collusion in this matter.

### 2. The Complexity, Expense and Likely Duration of the Litigation.

With respect to the second factor, courts have found that "employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Doe v. Coliseum Bar & Grill, Inc.*, 2020 U.S. Dist. LEXIS 196306, * 3 (E.D. Mich. October 22, 2020). Both Parties and their respective counsel agree that if the Parties continued to litigate it would result in costly and protracted litigation.

In this regard, Plaintiffs and Sedgwick continue to strongly disagree over the merits of the claims asserted by Plaintiffs as well as Sedgwick's defenses. If the parties continued to litigate this matter, they would be forced to engage in a costly and lengthy trial. Indeed, trial could involve a month or more not including the damages phase. Nor is there any guarantee Plaintiffs would prevail at trial. The administrative exemption is an inherently subjective and fact-specific standard that makes any outcome uncertain. An appeal of any verdict favorable to Plaintiffs could further risk or delay receipt of any proceeds from the litigation. This settlement, therefore, is a reasonable means for both Parties to minimize future risks and litigation costs.

### 3. Stage of the Proceedings.

Over the last two years, there has been more than sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged voluminous amounts of information through extensive discovery. In agreeing upon the proposed

settlement, the Parties had an abundance of information and conducted an extensive investigation to allow them to make an educated and informed analysis and conclusion.

Counsel for the Parties were also well positioned to evaluate the benefits of the Settlement, considering the risks and uncertainties of continued litigation, the time and expense that would be necessary to prosecute the Action through trial, any appeals that might be taken, and the likelihood of success. Information exchanged by the Parties and utilized in their negotiations and analysis include but is not limited to (i) the number of weeks a Plaintiff worked in a particular job during the relevant time period; (ii) the number of weeks worked by a Plaintiff during the class time period; (iii) when a Plaintiff opted into the lawsuit; (iv) the particular Plaintiff's rate of pay; (vi) the estimate of hours a Plaintiff worked in any given work week based upon Plaintiffs' estimate of hours as well as Sedgwick's records; and, other factors related to the legal risks associated with continued litigation and trial. Moreover, as noted above, the Parties had the added benefit of litigation and discovery in the *Easterwood* matter that further informed their respective positions. A variety of damage models were prepared and evaluated so that a fair and equitable distribution could be reached to treat all Class Members fairly and equitably.

Further, in the course of extensive settlement negotiations, Sedgwick and Plaintiff utilized their respective data analyses to come to an agreeable settlement amount. As a result, the Settlement was a compromise between Plaintiffs' calculations and Sedgwick's calculations, including considering the risks of protracted litigation and the benefits to all involved in settling.

**4. Likelihood of Success on the Merits.**

The risk of Plaintiffs being unable to establish liability and damages was also present because of the defenses Sedgwick intended to assert if the case was not settled. From Plaintiffs' perspective, there was a risk the Court/jury would accept one or more of Sedgwick's arguments

10

on a key point. Plaintiffs' success on any of these aspects in motions practice, let alone at trial, was not guaranteed. The administrative exemption Sedgwick asserted involves both intense factual examination and the application of rather subjective criteria, including: (1) whether an employee's "primary duty" was office work "directly related to the management or general business operations of the employer or the employer's customers;" and (2) whether the "employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." As with most cases, Plaintiffs (as well as Sedgwick) saw the reasonableness of compromise since the resolution of the ultimate issue would be particularly unknowable.

Plaintiffs' probability of success on the merits and the uncertainty of the amount Plaintiffs may have recovered, based on the number of overtime hours they could prove and whether damages would be calculated at half-time or time-and-a-half, further suggest that this settlement is fair and appropriate. As noted previously, Plaintiffs assert that Sedgwick did not pay them overtime compensation to which they were entitled. In addition to the risks associated with exemption issues, the range of possible recovery by Plaintiffs is also open to dispute based on the proof of hours worked and method of calculating damages. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and exercise of resources by both parties, the exact amount of their recovery is uncertain. And of course, there is risk that Sedgwick would prevail and Plaintiffs would take nothing by way of their Complaint.

### 5. Opinions of Class Counsel and the Class Representative.

Counsel in this action all have extensive experience litigating wage and hour cases including class and collective actions. The positions at issue in this case were the same at issue in the matter of *Easterwood v. Sedgwick*, 6:19-cv-700-Orl-78LRH (M.D. Fla), which was handled by the same Plaintiffs' Counsel as in this action. Thus, Plaintiffs' Counsel has been well informed

11

over many years in both *Easterwood* and this case, of the issues and risks, along with what is fair and equitable for all class members. Plaintiffs' Counsel and Gibbs find this settlement to be fair and equitable to all class members, given the risks and uncertainty of continued litigation.

    **6. No Absent Class Members.**

As to the sixth factor, there are no absent class members because this is an FLSA opt-in collective action. To become a Plaintiff in this case, each Plaintiff had to complete and return an individual Consent to Sue and Opt-In Form pursuant to which they agreed and consented to being Plaintiffs in this FLSA case and agreed to be bound by any judgment by the Court or any settlement of this action. Their individual Consent to Sue and Opt-In Forms also designated the law firm of Lytle & Barszcz to be their counsel in this action. As a result, any individual who did not return a Consent to Sue and Opt In Form has not waived any claims they may still have due to the settlement in this case.

    **7. The Public Interest.**

Regarding the seventh factor, it is well-settled that "the law encourages the settlement of class actions." *Scobey*, 2021 U.S. Dist. 207917 at *9, *quoting Franks v. Kroger Co*., 649 F. 2d 1216, 1224 (6th Cir. 1981). The public interest is clearly served as it implicitly serves the purpose and intent of Congress in enacting the FLSA which was "…to raise substandard wages and to give additional compensation for overtime work." *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945), *quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.). Clearly this settlement serves the public interest and upholds the purpose and intent of Congress in ensuring these collective class members receive additional compensation for overtime work.

## IV. Plaintiffs' Counsel Should be Awarded Their Negotiated Attorneys' Fees and Costs.

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorneys' fees. Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

When assessing the reasonableness of a fee award, district courts in this Circuit engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. This flexible approach allows the Court to account for the unique and varied circumstances present in each class action. The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Hebert v. Chesapeake Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, *11 (S.D. Ohio Sept. 20, 2019), *quoting Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, *14-15 (S.D. Ohio July 11, 2014)). "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, *16 (S.D. Ohio Feb. 16, 2021).

"[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class..." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to

13

the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" Id. As such, absent compelling reasons to the contrary, the percentage method is "preferred." *Arp v. Hohla & Wyss Ents.*, LLP, 2020 U.S. Dist. LEXIS 207512, *16 (S.D. Ohio Nov. 5, 2020); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. March 25, 1993) ("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Hebert*, 2019 U.S. Dist. LEXIS 160792, *21-22 (S.D. Ohio Sept. 20, 2019) (stating "33% is typical for attorney's fees in common fund, FLSA collective actions in this District..."); *see also Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371 (S.D. Ohio Nov. 25, 2019); *Estate of McConnell v. EUBA Corp.*, 2021 U.S. Dist. LEXIS 92836, *20-21 (S.D. Ohio May 17, 2021); *Arp*, LLP, 2020 U.S. Dist. LEXIS 207512 at *22; *Osman v. Grube, Inc.,* 2018 U.S. Dist. LEXIS 78222, *6 (N.D. Ohio May 4, 2018); *Thorn v. Bob Evans Farm*, 2016 U.S. Dist. LEXIS 195207, *7 (SD. Ohio Feb. 26, 2016) (awarding 32.92% of common fund).

Courts in this Circuit also analyze the six factors set forth in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). The Ramey factors include: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. Id.; *see e.g. Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, *11 (S.D. Ohio Oct. 17, 2018). There is not a formula for weighing the factors. *NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 U.S. Dist. LEXIS 139769, *7 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should

be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs*., 528 F.Supp.2d at 764.

There is also a benefit to the public considering that claimants with smaller claims may pool their claims and resources. Attorneys who handle class action cases enable this to occur. *See Moore v. Aerotek, Inc*., 2017 U.S. Dist. LEXIS 102621, *26 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage-and-hour cases brought on behalf of workers, and in order for attorneys to handle these complex wage and hour cases, society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. Id. (citation omitted).

Additionally, Plaintiffs' Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery. (Exh. 2 ¶ 6 – Declaration of Attorney David V. Barszcz).

In the instant case, Plaintiffs' counsel's fee is less than twenty-five percent (25%) of the total fund. (Exh. 2 ¶ 15). This percentage is well within the acceptable range. In addition, a lodestar cross-check, while not required, also supports Plaintiffs' counsel's fee request as well. *Mitchell v. Indep. Home Care, Inc*., 2019 U.S. Dist. LEXIS 26464, *18 (S.D. Ohio Feb. 20, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 39104 (S.D. Ohio Mar. 12, 2019).

Pursuant to the lodestar calculation method, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. Plaintiffs' Counsel has submitted a detailed Declaration in support of the requested attorneys' fees and costs. (Exhibit 2). Also, this Court should be aware that Plaintiffs' Counsel's work is not complete upon settlement approval, as Plaintiffs' Counsel frequently spends additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters, and

such additional work is expected in this case. The multiplier on Class Counsel's lodestar is approximately 1.14 before accounting for any additional work. (Exh. 2 ¶ 15). This is well within the acceptable range. *See Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, *6-8 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512 at *19 (S.D. Ohio Nov. 5, 2020) (approving lodestar multiplier of 5.29). Indeed, given the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate.

Finally, Plaintiffs and Defendant are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. Counsels' professional skill and standing support approving the fee. For these reasons, the Court should determine that the requested fees and costs are reasonable and approve the negotiated fees and costs of Six Hundred and Twenty-Five Thousand Dollars ($625,000.00).

## CONCLUSION

The FLSA settlement terms are fair, reasonable and adequate. Accordingly:

1. The Parties request that, upon a finding that the Settlement Agreement is fair, the Court issue an Order dismissing the case without prejudice and retaining jurisdiction for entry of a final order of dismissal, with prejudice.

2. Upon completion of the notice, release and payment provisions of the settlement, the Parties will file a Joint Motion for Dismissal, with prejudice, of the claims of Plaintiffs who

16

have signed and timely returned release forms. The Parties will submit a proposed order for dismissal with prejudice of those individuals, listing Plaintiffs that have released their claims.

3. Finally, the Parties request that the Court retain jurisdiction for enforcement of the Settlement Agreement.

**WHEREFORE**, the Parties respectfully request this Court approve the Parties' FLSA Settlement in this case.

Respectfully submitted this 13th day of November, 2023.

| | |
|---|---|
| LYTLE & BARSZCZ, P.A.<br>533 Versailles Drive, 2nd Floor<br>Maitland, FL 32751<br>Telephone: (407) 622-6544<br>Facsimile: (407) 622-6545 | WILSON TURNER KOSMO LLP<br>402 West Broadway, Suite 1600<br>San Diego, CA 92101<br>Telephone: (619) 236-9600<br>Facsimile: (619) 236-9669 |
| By: *Mary E. Lytle*<br>Mary E. Lytle, Esq.<br>Florida Bar No. 0007950<br>mlytle@lblaw.attorney | By: *Robin A. Wofford*<br>Robin A. Wofford, Esq.<br>California Bar No. 137919<br>rwofford@wilsonturnerkosmo.com |
| David V. Barszcz, Esq.<br>Florida Bar No. 750581<br>dbarszcz@lblaw.attorney | Lois M. Kosch, Esq.<br>California Bar No. 131859<br>lkosch@wilsonturnerkosmo.com |
| Attorneys for Plaintiffs | Leticia C. Butler, Esq.<br>California Bar No. 253345<br>lbutler@wilsonturnerkosmo.com |
| | and |
| | OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.<br>6410 Poplar Avenue, Suite 300<br>Memphis, TN 38119<br>Telephone: (901) 767-6160<br>Facsimile: (901) 767-7411 |
| | Thomas L. Henderson, Esq.<br>Tennessee Bar No. 011526<br>thomas.henderson@ogletreedeakins.com |
| | Attorneys for Defendant |